**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION**

EDWARD BISSAU MENDY                                  **PLAINTIFF**

**v.**                             **CIVIL ACTION NO.: 3:25-cv-15-MPM-JMV**

JOSHUA GRANT COPELAND, ET. AL.                  **DEFENDANTS**

## ORDER DENYING PLAINTIFF'S MOTION [DOC. 150]

This matter is before the Court on the motion of the in forma pauperis *pro se* Plaintiff,[1] who is seeking what he describes as "Protective and Evidentiary Relief Concerning Recommended Diagnostic Imaging and Financial Inability to Obtain Further Treatment by Edward Bissau Mendy."" [Doc. 150]. As discussed below, the motion seeks, in advance of trial and dispositive motion practice, a number of rulings, including for the Court to compel the Defendants to facilitate, or otherwise guarantee, payment for a magnetic resonance imaging (an "MRI") that Plaintiff contends he was recently recommended to have.

The history of this case has been, to say the very least, convoluted, but it arises from a motor vehicle accident that Plaintiff alleges he was involved in in Mississippi on January 2, 2023, with a vehicle owned by defendant Leslie Transport and driven by defendant Copeland. [Doc. 1]. Plaintiff alleges in his original complaint:

> 11. On belief and information Copeland intentionally tried to run Plaintiff off the road and may have been trying to injure or maim Plaintiff at the direction of others. Plaintiff would not be surprised in Copeland was a hired hitman intent on killing Plaintiff as a contract hitman.

---

[1] While Plaintiff is proceeding *pro se*, Plaintiff was admitted to practice law in Louisiana in 1993 until 2018, when he was disbarred after a series of suspensions. *See Mendy v. Pendleton*, No. CV 24-2765, 2025 WL 471804, at *3 (E.D. La. Feb. 12, 2025); *see also In re Mendy*, 243 So. 3d 538, 540 (La. 2018); *In re Mendy*, 217 So. 3d 260 (La. 2016); *In re Mendy*, 81 So. 3d 650 (La. 2012); *In re Mendy*, 793 So. 2d 1225 (La. 2001).

[Doc. 1] at 6.

According to Plaintiff, at the time of the accident, he was driving a car covered by insurance issued by Defendant Progressive Insurance Co. He also alleges that his car would have been covered by a Defendant GEICO insurance policy but for GEICO's earlier cancellation of that policy. He further alleges that the vehicle driven by Copeland was insured by Progressive as well. All of the insurance companies that Plaintiff alleges he had, or should have had, coverage on his vehicle through, have denied the existence of an active policy, and thus, have denied any coverage. The carrier for liability coverage on the Defendant's vehicle has also declined coverage, as Defendants' fault for the accident has been denied.

Since the filing of his initial complaint, Plaintiff has amended it three times. [Doc. 10, 15, 138]. The third amended complaint is itself 48 pages long, yet further purports to adopt by reference all of the allegations and claims of the original 30-page complaint.[2]

---

[2] Plaintiff alleges among numerous other claims, in his third amended complaint that the originally-named insurance companies and a number of newly added ones, engaged in enterprise-wide racial discrimination in contracting, fraud and bad faith resulting in these insurers wrongfully denying that he had in effect on the date of the subject accident an active policy providing coverage.

Among other perplexing allegation contained in his pleadings are these:

"Plaintiff further prays that this court declare that the Contract between Plaintiff and Joshua Grant Copeland was and/or is a valid and enforceable contact, and that the Contract specifically entitles Plaintiff to the right to purchase the properties for $1,600,000.00 with $400,000.00 owner financed and with the closing to take place within reasonable time to be set by this court.

Plaintiff further prays that this court Enjoin and award a preliminary injunction and permanent injunction to restrain Defendants and all those acting in concert with them, from continuing to engage in unfair business practices, and other unlawful activities for the purpose of (a) inducing or attempting to induce a breach of contract by Copeland with Plaintiff; (b) interfering with Plaintiff's business relations; c) interfering or attempting to interfere with Plaintiff's Contractual relations; (d) Inducing or attempting to induce breach of fiduciary obligations to Plaintiff; (e) slandering or demoing Plaintiff; and (f) engaging in unfair business practices an/or unfair competition. Require Defendants to show cause, if they have any, why they should not be enjoined as hereinafter set forth during the pendency of this action."

"101. On belief and information, Copeland may have been trying to kill or serious [sic] injure Mendy at the direction of Danial Kinahan and/or Kinahan Cartel for standing up to them."

"110. At all times relevant, Defendant, Marvin Marhsall, was the tortfeasor driver and Leslie transport was the insured owner of the vehicle involved in the accident at issue."

"113. Marvin Marshall was very hyperactive suggestive that he was under the influence of drugs or some dangerous substances at the time of the collision which may have altered his judgment at the time of the accident. He was behaving irrationally and erratically in all attempts to avoid all eye contact."

"114. Plaintiff Edward Bissau Mendy will show that the said accident was caused solely and proximately by the gross negligence of the Defendant driver, Marvin Marshall in the following non-exclusive respects:

Of relevance to the instant motion is the fact that Plaintiff offers what he contends is his pauper status as the reason the Defendants should pay for, or "facilitate" his payment for the projected cost of what he alleges is an MRI recommended to him approximately two weeks prior to April 22, 2026.[3] [Doc. 150] – Exh. 2. The motion itself does not include an actual recommendation for an MRI, provide any reason for the same, or reference a causal relationship to the subject January 2023 motor vehicle accident. And, while it does, contain an estimate for what an MRI would cost, it does not provide a reason that Plaintiff's own health insurer has declined to pay for the same.[4]

The instant motion follows a written request Plaintiff made to counsel for Defendants in late April 2026 and subsequent email correspondence in early May 2026. [Doc. 150] – Exh. 3-11. In his letter and emails, Plaintiff requests that Defendants pay his medical expenses for an MRI or execute some form of payment guarantee, which each Defendant has declined. In his motion, Plaintiff seeks, in addition to an order compelling the Defendants to facilitate payment of the cost of an MRI, a ruling that he will be permitted at a trial of this matter to discuss, (as phrased by him):

a. The recommendation for MRI imaging;
b. The costs and deposit requirements associated with such imaging;
c. Plaintiff's inability to afford the imaging; and
d. Defendants' knowledge of these financial barriers.

[Doc. 150] at 5.

Plaintiff further requests that Defendants be precluded from arguing in defense of this case that:

a. Plaintiff's injuries are insignificant solely because MRI imaging has not been completed;

---

a. Running a red light in violation of Louisiana Traffic laws and public policy;"
[3] A time which the court notes coincides with his return from overseas travel. *See* [Doc. 100].
[4] *See*, [Doc. 150] - Exh. 3. ("The cost is $550.00, which I cannot afford and which my health insurance company will not pay for.")

     b.  The absence of MRI imaging constitutes affirmative evidence that Plaintiff suffered no structural injury; or

     c.  Plaintiff voluntarily abandoned recommended treatment without acknowledgment of Plaintiff's documented financial inability to proceed.

*Id.* at 5-6.

Plaintiff's motion is accompanied by a "declaration" in which he further opines he also requires a neurological evaluation, counseling, mental health treatment, and a cardiology evaluation.

By way of response to his motion, Defendant GEICO (and by joinders Copeland and Leslie Transport) point out that, at this stage, Plaintiff has offered no evidence of any of the factual allegations he makes in support of his motion: that is, he offers no evidence that a recommendation for an MRI causally related to the subject motor vehicle accident was made, (in fact they note that the x-rays that were done following the subject accident apparently revealed no acute findings); Plaintiff has offered no proof that he can't afford an MRI (which is alleged to have been recommended to him at, what the Court notes was roughly the same time as his return this year from overseas travel); and Plaintiff has offered no proof or explanation of how Defendants would know what Plaintiff's financial barriers, if any, are, in any event. Nor has Plaintiff offered any legal authority to support any of the relief he seeks.

The Court's Ruling:

This motion, made without factual proof or a shred of legal authority offered in support, is made at the outset of a revised approximate additional 6-month discovery period and well in advance of a renewed opportunity to make *expert* designations (where none were made previously). As such, it is both unsupported and premature. Should any evidence be developed in discovery relating to any relief sought by Plaintiff herein and any legal authority exists to support

the same, Plaintiff may file a proper motion at that time. Accordingly, the motion [Doc. 150] is denied.

SO ORDERED, this, the 6th day of July, 2026.

/s/ Jane M. Virden

**UNITED STATES MAGISTRATE JUDGE**