**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**OXFORD DIVISION**

**EDWARD BISSAU MENDY** **PLAINTIFF**

**VERSUS** **Civil Action No. 3:25CV15-MPM-JMV**

**JOSHUA GRANT COPELAND, LES TRANSPORT, PROGRESSIVE INSURANCE COMPANY, GEICO INSURANCE COMPANY, ABC INSURANCE COMPANY, DEF INSURANCE COMPANY, AND GHI INSURANCE COMPANY** **DEFENDANTS**

# ORDER

This court presently has before it Rule 12 motions to dismiss filed by several insurance defendants in the above-entitled action. The *pro se* plaintiff Edward Bissau Mendy has responded in opposition to the motions, and the court, having considered the memoranda and submissions of the parties, is prepared to rule.

This is, at its core, a car crash case arising out of a January 2, 2023 collision between plaintiff and defendant Joshua Grant Copeland, a commercial truck driver employed by defendant LES Transport. [Third Amended Complaint at 5]. While allegations of negligence against Copeland form the heart of this action, this case is unusual among car crash cases in that plaintiff has chosen to assert claims of a wide-ranging conspiracy among several insurance companies which, he claims, insured either himself or defendants at one time or another. This court presently has before it several Rule 12 motions to dismiss filed by these insurance

defendants,[1] but, prior to addressing them, it must address the fact that plaintiff did not respond to them for three months.

Defendants have moved to strike plaintiff's responses as untimely, while he has filed a motion seeking leave to have those responses accepted out of time. In doing so, plaintiff offers what this court regards as a relatively strong reason for his late responses, namely that he was in Africa seeking medical treatment for the injuries he received in his accident and that he was not emailed copies of the motions in question. [Docket entry 185 at 1-2]. While this court will regard this as "good cause" for plaintiff's delayed response, it does agree with defendants that plaintiff clearly should have checked the docket in the case at some point during the three months when the motions were pending.

In so stating, this court notes that, while plaintiff is proceeding *pro se*, defendants have submitted evidence that he was, for decades, a practicing lawyer who has since been disbarred by the Louisiana Supreme Court after multiple suspensions. [Docket entry 88, exhibit A at 9]. In noting plaintiff's history of disciplinary actions, U.S. District Judge Sarah S. Vance wrote in a 2025 decision that:

> Mendy was admitted to practice law in Louisiana in 1993 and continued to practice law in the state until May 25, 2018, when he was disbarred after a series of suspensions. *See In re Mendy*, 243 So. 3d 538, 540 (La. 2018) ("*Mendy IV*"); *see also In re Mendy*, 217 So. 3d 260 (La. 2016) ("*Mendy III*"); *In re Mendy*, 81 So. 3d 650 (La. 2012) ("*Mendy II*"); *In re Mendy*, 793 So. 2d 1225 (La. 2001) ("*Mendy I*").

---

[1] This court notes that it previously dismissed defendant Drive New Jersey (DNJ) based on personal jurisdiction grounds, without considering the merits of the claims against it. However, this court regards such personal jurisdictional arguments as being less compelling when asserted by national insurers such as GEICO and Progressive, as opposed to one such as DNJ, which is so clearly devoted to covering residents in a particular state (which is not Mississippi). These other insurers have each filed alternative Rule 12(b)(6) motions to dismiss for failure to state a claim, and this court concludes that these motions offer a much clearer basis for dismissing the claims against them than a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

*Mendy v. Pendleton*, 2025 WL 471804, at *3 (E.D. La. Feb. 12, 2025). Clearly, any attorney – active or otherwise – should understand the dangers of not checking the docket for months in a case in which he is involved. Moreover, in assessing the reliability of plaintiff's assertions in this case, this court is not required to overlook the fact that Judge Vance found that plaintiff had, in seeking to create diversity jurisdiction in the case before her, sought to give the false impression that he was a citizen of New Jersey when he was actually domiciled in Louisiana. *Mendy*, 2025 WL 471804, at *4.

In so finding, Judge Vance wrote that:

> Mendy does not assert that he owns any property, conducts any business, or has maintained any professional licenses in New Jersey. Mendy alleges that he obtained a driver's license and registered to vote in New Jersey but fails to provide any evidence of either. Regardless, even if Mendy offered proof, these expedient actions do not outweigh the far more substantial evidence that Mendy remains a citizen of Louisiana. *See, e.g.*, *Salim v. Mountain Express Oil Co.*, 667 F. Supp. 3d 517, 522 (S.D. Tex. 2023) (finding that evidence that plaintiff registered to vote and obtained a driver's license in New Mexico "was far from sufficient" to establish citizenship, and instead "appear[ed] merely expedient.").
>
> Lastly, Mendy's domicile must also be considered in light of his flat representations to defendants in April 2024 that he was a resident of the state of Louisiana. In the purchase and sale agreement subject of this action, Mendy represented that he was a "resident of ... the state of Louisiana, individually, and as Manager of the Louisiana Limited Liability Company LLC, Mendy Brothers, LLC." Mendy provides no evidence that he changed domiciles between the representations he made to the defendants and the filing of this lawsuit. Mendy's alleged domicile of New Jersey appears to be asserted merely out of expedience. *See Salim*, 667 F. Supp. at 522 (finding that plaintiff's asserted domicile in New Mexico "strain[ed] credulity" and was "expedient nonsense" when he made multiple representations to defendant that he was a citizen of Georgia several months earlier).

*Mendy*, 2025 WL 471804, at *4. It appears to this court that Judge Vance's statement that plaintiff's false assertion of New Jersey residency was made "out of expedience" was merely a polite way of saying that he was lying, and she further made it clear that:

> Mendy's assertion that he has always identified himself as a New Jersey resident and citizen in all litigation since 2007 is patently false. Mendy's conflicting statements in

> different legal proceedings about his domicile indicate that his current representations lack candor and credibility.

*Id.* at *3.

This court notes that the Louisiana Supreme Court found similar dishonest behavior on plaintiff's part. For example, in concluding that he should be disbarred, that court found that "through his acceptance of fees, misrepresenting the services he was to perform, and engaging in conduct involving dishonesty and deceit," plaintiff knowingly violated Rule 8.4(c) of the Rules of Professional Conduct. *Mendy*, 243 So. 3d at 541. The Louisiana Supreme Court further found that plaintiff "failed to answer the formal charges" against him, *id.* at 540, just as he had done in past disciplinary actions against him. *See, e.g. Mendy*, 217 So. 3d at 263.

This court will excuse plaintiff's late filing of his briefing in spite of his troubling history of dishonest behavior, but this adverse history cannot help but cause it to look with an even more skeptical eye upon allegations in the amended complaint which already seem implausible. In so stating, this court emphasizes that determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009). In this vein, it seems entirely appropriate that this court consider the simple reality that the "context" of this case involves highly unusual allegations of a broad conspiracy among insurance companies and that these allegations are made by an individual who has spent much of his adult life making dishonest and unethical use of his legal training, as found by multiple courts and disciplinary panels.

In this vein, this court notes that the third amended complaint includes a number of claims against the insurance defendants which strike it as being implausible on their face, and, in light of plaintiff's history, appear to constitute bad faith "shakedown" attempts. To give one

example, plaintiff alleges a conspiracy among the "insurance defendants" based on racial discrimination, asserting that:

> 221.The Insurance Defendants' conduct was not isolated, but part of a pattern and practice of discriminatory and bad faith insurance conduct directed at policyholders, including minority insureds.
> 222.Upon information and belief, Insurance Defendants have engaged in a recurring course of conduct including:
> a. Disproportionate policy cancellations affecting minority insureds,
> b. Heightened underwriting scmtiny based on pretextual criteria,
> c. Selective enforcement of policy provisions,
> d. Strategic denial or avoidance of claims involving minority policyholders,
> e. Use of complex subsidiary structures to obscure accountability
> 223.Insurance Defendants' actions on belief and information, even if they reflect facially neutral policies, were applied in a discriminatory manner, resulting in disparate treatment and disparate impact.

[Third amended complaint at 25].

In his third amended complaint, plaintiff makes it clear that, by "insurance defendants," he is referring to multiple insurance companies, including "GEICO, GEICO Casualty, GEICO Indemnity, Progressive Insurance Company, Blue Hill and Drive New Jersey." [*Id.* at 32]. This court would regard bare allegations of discrimination such as those raised by plaintiff as being highly conclusory even if they were levied against a single insurance company, but the notion that several such companies each acted in this case based upon such motives strikes it as implausible in the extreme and a sign of bad faith on plaintiff's part. Indeed, these are not the sort of allegations which deserve to be taken seriously, particularly when they come from a disbarred attorney who has been found to have previously made dishonest statements in federal court. This court therefore intends to take a very hard look at plaintiff's claims against the insurance defendants, and, in doing so, it will not be swayed by his nominal status as a "pro se" litigant.

In so stating, this court observes that plaintiff has shown himself to be a savvy legal operator who has deftly used his legal expertise and nominal "pro se" status to continually "kick the can down the road" on claims which he is clearly not prepared to defend on their merits. For example, plaintiff has repeatedly sought, when confronted with motions to dismiss or summary judgment, to file amended complaints which serve to moot the dispositive motions in question and require a new set of motions and briefing. In so doing, plaintiff clearly seems aware that federal courts have a strong tendency to grant motions to amend filed by *pro se* litigants, given Rule 15's provision for the liberal amendment of pleadings and the well-established requirement that courts show leniency to *pro se* litigants.

These dual leniencies provide a strong impetus for district courts to err on the side of allowing a *pro se* litigant to "say what he has to say" in an amended complaint, and, in cases where some or all of his claims prove to lack merit, to attribute this fact to the litigant's ignorance of the law, as opposed to deliberate bad faith. Such benefits of the doubt are clearly inappropriate in relation to Mendy, however, who clearly knew what he was doing in asserting claims that no trained lawyer could believe had merit. True to form, plaintiff has responded to the present motions to dismiss with yet another request to file an amended complaint – his fourth - but this court concludes that the time has come to bring many of the baseless claims asserted in this case to a well-deserved end.

As to the claims against GEICO, defendants GEICO Casualty Company ("GEICO Casualty") and GEICO Indemnity Company ("GEICO Indemnity") seek dismissal on the ground that "[t]he entity that actually insured Plaintiff is GEICO Secure Insurance Company ("GEICO Secure") and "[t]hat is the only GEICO entity Plaintiff could possibly have a claim against." [Docket entry 169 at 3.] Moreover, as to GEICO Secure, GEICO writes that:

> The dispositive facts remain unchanged. GEICO Secure cancelled/nonrenewed Plaintiff's policy effective November 4, 2022, approximately two months before the January 2, 2023 accident, at Plaintiff's own request and for nonpayment. [Docs. 63, 64, 87].

[Docket entry 183 at 2].

In so arguing, GEICO incorporates its previously-filed motion for summary judgment, which was mooted by an amended complaint subsequently filed by plaintiff. Still, this court has plaintiff's response to GEICO's previously-filed motion, and it agrees with GEICO's argument in its reply brief that:

> First, at Plaintiff's request, GEICO cancelled the policy. Plaintiff cannot offer any evidence that GEICO needed any other reason to cancel his policy, and all of his assertions against GEICO regarding cancellation of the policy do not create questions of fact that would preclude GEICO's Motion for Summary Judgment. The only material fact regarding this issue was that the policy was cancelled at Plaintiff's request, and Plaintiff cannot postulate that he is entitled to any coverage under the policy. No other issues regarding cancellation are genuine nor are they material.

[Docket entry 87 at 4]. In support of its motion for summary judgment, GEICO included both an affidavit and an accompanying "policy log" dated October 21, 2022 which quoted plaintiff as follows:

> Message Details: I do not approve of the renewal at the rates quoted. Please do not renew my policy if it cannot be underwritten as a New Jersey policy. Also, please send me written reason why the information I sent you is not sufficient proof of my New Jersey citizenship and residency. Yours truly, Edward Mendy (504) 339-4782 (973) 650-9721.

[Docket entry 63, exhibits C and D].[2]

---

[2] It appears that, in order to consider such extrinsic evidence, this court must first convert the Rule 12(b)(6) motions to dismiss to ones seeking summary judgment, and it will accordingly do so. This court sees no need to grant plaintiff an additional opportunity to provide his own counter-evidence, since he has already submitted briefing on prior summary judgment motions which were mooted only by the filing of amended complaints. In retrospect, these requested amendments constituted a bad faith litigation tactic on the part of a plaintiff who is a "pro se" litigant in name only and who sought (with some success, unfortunately) to improperly benefit from the lenient standards ordinarily applicable to such litigants. That undue leniency ends with this order today, and plaintiff's motion to file yet another amended complaint will be denied.

In finding this evidence compelling, this court emphasizes that the policy log in question was not a document prepared for this lawsuit, but was, rather, a contemporaneous log of all events, both before and after the one quoted above, which were relevant to plaintiff's policy. Moreover, GEICO supports this log with an affidavit from one of its agents, confirming that plaintiff requested that his policy be cancelled. This court believes that the reliability of the log is enhanced even further by the fact that it references the same New Jersey residency issue which was discussed by Judge Vance in her ruling. Of course, Judge Vance had not yet issued her order cited above at the time the log entry in question was made, which means that GEICO obviously had no way of knowing about it. In seeking to rebut this evidence, plaintiff relies upon his own assurance, asserted in a declaration, that he did not request that his policy be cancelled. While this court is required to view the facts in the light most favorable to plaintiff, as the non-moving party, it is not required to completely turn off its common sense in considering these facts. Using that common sense, it is very clear to this court what is going on here and that plaintiff's declaration is simply another in a long line of lies which he has told in this case and in others.

This court notes that plaintiff's reference to "New Jersey" policy rates relates to the fact that GEICO found that he had improperly asserted residency in that state in order to benefit from the lower rates there. As quoted above, Judge Vance found that plaintiff had engaged in the exact same dishonesty in the action before her, which clearly tends to support GEICO's refusal to allow him to benefit from the lower rates in New Jersey. Moreover, this policy history clearly supports a conclusion that this specific disagreement led to the mutually agreed cancellation of plaintiff's GEICO policy, and not some entirely implausible racial animus on GEICO's part. While plaintiff's racial discrimination claims thus strike this court as being highly implausible as

to GEICO alone, it believes that they veer into the realm of complete absurdity when considered in light of plaintiff's bare assertion that several other insurance defendants were somehow motivated by the same racial animus against him.

Likewise without any arguable merit is plaintiff's claim that the "insurance defendants" engaged in a conspiracy to deny him coverage based on a common desire to avoid liability for an automobile accident which had not even occurred yet. Specifically, the Third Amended Complaint purports to assert an action for "conspiracy" against "all Insurance Defendants" based on the allegation that the Progressive entities conspired with GEICO companies to wrongfully cancel plaintiff's insurance coverage on one or more of his vehicles involved in the accident in this case. This court believes that, in its motion to dismiss, Progressive aptly points out the absurdity of this alleged conspiracy, writing that:

> Mendy has alleged no factual content from which it reasonably could be inferred that the alleged conspiracy existed. In particular, he has failed to allege any facts to suggest a plausible reason for unrelated insurance companies to act in concert to cancel his policies or deny his claims. In addition, the alleged motivation for the collusion-to carry out "a deliberate claims avoidance strategy"-is highly implausible since it would require that the various companies' officials possessed a psychic ability to know that the subject accident was imminent.

[Brief at 19].

The fact that plaintiff does, in fact, seek to impute such omniscience to the insurance defendants seems clear enough from the Third Amended Complaint's allegation that "[t]he timing of the GEICO and Progressive policy cancellations-immediately preceding the loss-was not coincidental but part of a deliberate claims avoidance strategy." [*Id.* at 22]. Thus, plaintiff would apparently have this court believe that the insurance defendants conspired with each other by agreeing, in effect, that "this policyholder will soon be involved in a serious accident, and we should therefore work together to cancel his coverage." This court would further observe that,

generally speaking, insurance companies are only too happy to collect premiums from insureds and that it is only after an accident has occurred that difficulties may arise in obtaining policy benefits. An additional layer of absurdity arises from the fact that there is no apparent reason why GEICO would care whether plaintiff had Progressive insurance coverage for his upcoming accident or not, and vice versa, and thus no reason to "conspire" to deny him coverage. As a final point, this court notes that there are many car insurance companies to choose from, and plaintiff alone is responsible for the fact that he chose to drive without coverage from some other insurer, after his previous policies were cancelled.

This court accordingly agrees with the insurance defendants that plaintiff's conspiracy theories are preposterous and knowingly false, and, in doing so, it reiterates that GEICO has submitted contemporaneous records indicating that plaintiff *requested* that his policy be cancelled based on the premiums charged. Moreover, it seems clear that GEICO's decision to charge premiums based on the rates applicable to plaintiff's actual Louisiana residence is strongly supported by Judge Vance's conclusion that he had likewise sought to benefit from a fake New Jersey residence in the action before her. The record therefore supports a conclusion that, not only did the insurance defendants not conspire with each other to wrongly cancel plaintiff's coverage, but it was plaintiff who acted dishonestly and in bad faith in his dealings with them.[3]

In the court's view, the notion that the Progressive entities and the GEICO entities would have joined together to prevent liability for an accident they had no way of knowing would even occur is just as absurd as plaintiff's allegation that they would have done so based on a sudden

[3] This court notes that plaintiff continues to insist in his Third Amended Complaint that "[a]t all times relevant, [he] was and is a citizen of the State of New Jersey," *id.* at 7, and this is merely one of many instances of what appear to be known falsehoods asserted in that complaint.

collective realization that he was (like many of their other policyholders) African-American. This court therefore concludes that plaintiff has knowingly asserted false claims against the "insurance defendants" in this case, with the apparent goal of using his legal expertise to assert every imaginable claim he might conceivably allege these defendants, in order to drive up the nuisance settlement value of his claims against them. This court accordingly concludes that the insurance defendants' motions to dismiss should be granted and that this case should be limited to the vehicle accident claims against Copeland and LES.

This court emphasizes that its ruling in this regard is intended both as a ruling on the merits of the Third Amended Complaint and as a sanction for plaintiff's abusive litigation practices towards the insurance defendants in this case. Thus, even assuming, purely for the sake of argument, that there are one or more limited claims which might even arguably be asserted against one or more of the "insurance defendants," (and this court does not believe that there is, for the reasons stated in defendants' briefing) then it would still conclude that the abusive manner in which plaintiff asserted a lengthy list of blanket claims against the insurance defendants, which no current or former attorney could believe have merit, constitutes grounds for dismissing them from this particular lawsuit. In this vein, this court observes that plaintiff's history of repeatedly using his legal expertise for dishonest purposes, as evidenced by multiple suspensions and a disbarment, as well as findings of dishonest behavior by the Louisiana district court, counsels against showing him any leniency in this regard.

Having said that, nothing in this court's ruling today is intended to prevent or hinder plaintiff from seeking recovery from any liability carrier for Copeland and/or LES, in the event that he prevails on his negligence claims in this case and any such carrier improperly denies coverage. This court hastens to add that it has no reason to suspect that such an improper denial

of coverage would, in fact, be made in this case, but it does not intend for its ruling today to serve as a "shield" for any such improper conduct. That being the case, this court may choose to amend its order today if plaintiff should present it with actual *proof* that there is a liability insurer defendant in this case which 1) issued a policy covering defendant(s) at the time of plaintiff's accident and 2) which has denied coverage for that accident. In that event, this court may well choose to allow a claim for declaratory relief to proceed against such an insurer, as is permitted by Mississippi law, notwithstanding the general prohibition against "direct actions" against liability insurers. *See, e.g. Poindexter v. S. United Fire Ins. Co.*, 838 So. 2d 964, 968 (Miss. 2003)(making clear that it is improper to file a declaratory judgment action against a liability insurer who has not yet denied coverage).

This court notes that, shortly before the issuance of this order, plaintiff filed yet another motion to amend, this time seeking to add several new defendants who, he asserts, he should be allowed to add to this lawsuit in order that he may "determine" whether they share responsibility for the accident in this case, based on their relationship to defendants. Specifically, plaintiff argues that he should be allowed to "add Mid-South Milling Company, Big Bear Logistics, Scoular Company, and The Andersons, Inc. because documentary information identifies relationships warranting examination in connection with Leslie Transport's commercial transportation operations." [Docket entry 194-1 at 21]. This strikes this court as being yet another example of plaintiff searching for additional defendants whom he may subject to expensive discovery on what are almost certainly entirely meritless claims, as part of a shakedown attempt against them. This court will deny plaintiff's request to amend, both on its merits and due to his abuse of the amendment process in the past. This court further cautions plaintiff that he should be relieved that it has not yet imposed monetary sanctions against him, or

dismissed this case entirely, but each of these potential remedies is very much on the table if his abusive litigation practices continue.

In light of the foregoing, it is ordered that the remaining insurance defendants' motions to dismiss [159-1, 163-1, 168-1], converted to ones seeking summary judgment, are granted. Plaintiff's motions to amend [176-1, 193-1] are denied. Plaintiff's motions [184-1, 191-1] to file briefing out of time are granted, and defendants' motion to strike [178-1] that briefing is denied. Defendants' motion to stay [180-1] is dismissed as moot.

This, the 28th day of October, 2026.

/s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI